2017 IL App (1st) 160756
Opinion filed: June 30, 2017

SIXTH DIVISION

Nos. 1-16-0756, 1-16-0954, 1-16-0955, & 1-16-0956, consolidated
_____
No. 1-16-0756

| | | |
|---|---|---|
| MARQUE MEDICOS FULLERTON, LLC;<br>MEDICOS PAIN & SURGICAL SPECIALISTS, S.C.;<br>AMBULATORY SURGICAL CARE FACILITY, LLC;<br>and MARQUE MEDICOS KEDZIE, LLC,<br>for Themselves and All Others Similarly Situated, | )<br>)<br>)<br>)<br>)<br>) | Appeal from the<br>Circuit Court of<br>Cook County. |
| Plaintiffs-Appellants, | )<br>) | |
| v. | )<br>) | No. 15 CH 4580 |
| ZURICH AMERICAN INSURANCE COMPANY,<br>AMERICAN ZURICH INSURANCE COMPANY,<br>ASSURANCE COMPANY OF AMERICA, and<br>MARYLAND CASUALTY COMPANY, | )<br>)<br>)<br>)<br>) | Honorable<br>Rita M. Novak, |
| Defendants-Appellees. | ) | Judge Presiding. |

_____
No. 1-16-0954

| | | |
|---|---|---|
| MARQUE MEDICOS FULLERTON, LLC;<br>MEDICOS PAIN & SURGICAL SPECIALISTS, S.C.;<br>and AMBULATORY SURGICAL CARE FACILITY,<br>LLC, for Themselves and All Others Similarly Situated, | )<br>)<br>)<br>) | Appeal from the<br>Circuit Court of<br>Cook County. |
| Plaintiffs-Appellants, | )<br>) | |
| v. | )<br>) | No. 15 CH 4946 |
| TRAVELERS PROPERTY CASUALTY COMPANY<br>OF AMERICA, TRAVELERS INDEMNITY<br>COMPANY OF AMERICA, TRAVELERS<br>CASUALTY INSURANCE COMPANY OF AMERICA,<br>TRAVELERS CASUALTY AND SURETY COMPANY<br>OF AMERICA, THE PHOENIX INSURANCE<br>COMPANY, FARMINGTON CASUALTY COMPANY,<br>THE STANDARD FIRE INSURANCE COMPANY,<br>and THE CHARTER OAK FIRE INSURANCE<br>COMPANY, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Honorable<br>Rita M. Novak, |
| Defendants-Appellees. | ) | Judge Presiding. |

Nos. 1-16-0756, 1-16-0954, 1-16-0955, & 1-16-0956, consolidated

No. 1-16-0955

| | | |
|---|---|---|
| MARQUE MEDICOS FULLERTON, LLC; | ) | Appeal from the |
| MEDICOS PAIN & SURGICAL SPECIALISTS, S.C.; | ) | Circuit Court of |
| and AMBULATORY SURGICAL CARE FACILITY, | ) | Cook County. |
| LLC, for Themselves and All Others Similarly Situated, | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | No. 15 CH 4949 |
| | ) | |
| HARTFORD UNDERWRITERS INSURANCE | ) | |
| COMPANY; HARTFORD INSURANCE COMPANY | ) | |
| OF THE MIDWEST; HARTFORD ACCIDENT AND | ) | |
| INDEMNITY COMPANY; HARTFORD INSURANCE | ) | |
| COMPANY OF ILLINOIS; HARTFORD FIRE | ) | |
| INSURANCE COMPANY; HARTFORD CASUALTY | ) | |
| INSURANCE COMPANY; TWIN CITY FIRE | ) | |
| INSURANCE COMPANY; TRUMBULL INSURANCE | ) | |
| COMPANY; and SENTINEL INSURANCE | ) | |
| COMPANY, LTD., | ) | Honorable |
| | ) | Rita M. Novak, |
| Defendants-Appellees. | ) | Judge Presiding. |

_____

No. 1-16-0956

| | | |
|---|---|---|
| MARQUE MEDICOS FULLERTON, LLC; | ) | Appeal from the |
| MEDICOS PAIN & SURGICAL SPECIALISTS, S.C.; | ) | Circuit Court of |
| and AMBULATORY SURGICAL CARE FACILITY, | ) | Cook County. |
| LLC, for Themselves and All Others Similarly Situated, | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | No. 15 CH 4951 |
| | ) | |
| AIG INSURANCE COMPANY, f/k/a Chartis Casualty | ) | |
| Company; NATIONAL UNION FIRE INSURANCE | ) | |
| COMPANY OF PITTSBURGH; ILLINOIS NATIONAL | ) | |
| INSURANCE COMPANY; COMMERCE & | ) | |
| INDUSTRY INSURANCE COMPANY; NEW | ) | |
| HAMPSHIRE INSURANCE COMPANY; INSURANCE | ) | |
| COMPANY OF THE STATE OF PENNSYLVANIA; | ) | |
| AMERICAN HOME ASSURANCE COMPANY; and | ) | |
| AIG PROPERTY CASUALTY COMPANY, f/k/a | ) | |
| Chartis Property Casualty Company, | ) | Honorable |
| | ) | Rita M. Novak, |
| Defendants-Appellees. | ) | Judge Presiding. |

Nos. 1-16-0756, 1-16-0954, 1-16-0955, & 1-16-0956, consolidated

JUSTICE ROCHFORD delivered the judgment of the court, with opinion.
Presiding Justice Hoffman and Justice Delort concurred in the judgment and opinion.

**OPINION**

¶ 1    In these consolidated appeals, plaintiffs-appellants[1] appeal from the dismissal, with prejudice, of four separate putative class-action lawsuits filed against defendants-appellees.[2] For the following reasons, we conclude that the circuit court had subject-matter jurisdiction to consider plaintiffs' claims and that those claims were properly dismissed with prejudice.

¶ 2                              I. BACKGROUND

¶ 3    In March 2015, plaintiffs filed four putative class-action lawsuits, one each against the Zurich, Travelers, Hartford, and AIG defendants (collectively, defendants). On June 16, 2015, the suits against the Travelers, Hartford, and AIG defendants were reassigned, as related cases, to the courtroom where the initially-filed suit against the Zurich defendants was pending. The complaints filed in each lawsuit generally seek redress for defendants' alleged failure to comply

---

[1]Plaintiffs-appellants in each appeal include Marque Medicos Fullerton, LLC; Medicos Pain & Surgical Specialists, S.C.; and Ambulatory Surgical Care Facility, LLC, for themselves and all others similarly situated. In addition, Marque Medicos Kedzie, LLC is also a plaintiff-appellant in appeal No. 1-16-0756.

[2]Defendants-appellees in appeal No. 1-16-0756 (Zurich defendants) are Zurich American Insurance Company, American Zurich Insurance Company, Assurance Company of America, and Maryland Casualty Company. The defendants-appellees in appeal No. 1-16-0954 (Travelers defendants) are Travelers Property Casualty Company of America, Travelers Indemnity Company of America, Travelers Casualty Insurance Company of America, Travelers Casualty and Surety Company of America, The Phoenix Insurance Company, Farmington Casualty Company, The Standard Fire Insurance Company, and The Charter Oak Fire Insurance Company. The defendants-appellees in appeal No. 1-16-0955 (Hartford defendants) are Hartford Underwriters Insurance Company; Hartford Insurance Company of the Midwest; Hartford Accident and Indemnity Company; Hartford Insurance Company of Illinois; Hartford Fire Insurance Company; Hartford Casualty Insurance Company; Twin City Fire Insurance Company; Trumbull Insurance Company; and Sentinel Insurance Company, LTD. The defendants-appellees in appeal No. 1-16-0956 (AIG defendants) are AIG Insurance Company, f/k/a Chartis Casualty Company; National Union Fire Insurance Company of Pittsburgh; Illinois National Insurance Company; Commerce & Industry Insurance Company; New Hampshire Insurance Company; Insurance Company of the State of Pennsylvania; American Home Assurance Company; and AIG Property Casualty Company, f/k/a Chartis Property Casualty Company.

with requirements contained in the Workers' Compensation Act (Act). 820 ILCS 305/1, *et seq.* (West 2014).

¶ 4    More specifically, plaintiffs allege that they—and a class of similarly situated others— had provided medical services to employees for work-related injuries. Pursuant to the Act, the employers of those employees had the responsibility to timely pay for those medical services, with those employers being insured for that responsibility by identical workers' compensation insurance policies issued by defendants. Noting that the Act requires that late payments to providers, such as plaintiffs, "shall incur interest at a rate of 1% per month payable to the provider" (820 ILCS 305/8.2(d)(3) (West 2014)), contending that this statutory provision was incorporated into the standard policies issued by defendants, and further contending that defendants had in fact made "many" untimely payments for such services without also paying interest, plaintiffs' complaints sought relief in four counts.

¶ 5    In each complaint, count I contends that plaintiffs were third-party beneficiaries of the standard policies defendants issued to employers and that plaintiffs were therefore entitled to recover for defendants' breach of those policies. Count II alleges that plaintiffs had an implied private right of action to recover for defendants' violation of section 8.2(d)(3) of the Act. Count III asserts that defendants had breached contracts with plaintiffs that were implied-in-fact. Finally, count IV seeks an award of attorney fees and statutory damages for defendants' vexatious and unreasonable refusal to pay accrued interest for late payments, pursuant to section 155 of the Illinois Insurance Code (Insurance Code) (215 ILCS 5/155 (West 2014)). The complaints seek "the statutory interest that accrued and is payable to them on bills that were paid by Defendants but after the Due Date, for services covered by the Act," attorney fees, prejudgment interest, and injunctive relief mandating that defendants "institute, maintain and

follow" procedures that will ensure that, in the future, defendants will timely comply with the requirements of section 8.2(d)(3) of the Act.

¶ 6     Motions to dismiss each suit for failure to state claims were filed by defendants, pursuant to section 2-615 of the Code of Civil Procedure (Code). 735 ILCS 5/2-615 (West 2014). The motion to dismiss filed by the Travelers' defendants asserted, *inter alia*, that the circuit court lacked subject-matter jurisdiction over plaintiffs' claims because the Act vested exclusive jurisdiction to consider those claims with the Illinois Workers' Compensation Commission (Commission). The Hartford defendants had additionally sought to strike the class allegations, pursuant to section 2-619 of the Code. 735 ILCS 5/2-619 (West 2014).

¶ 7     On February 19, 2016, following a prior hearing on the motions, the circuit court entered a memorandum opinion and order in which it dismissed each of the plaintiffs' lawsuits with prejudice. In reaching that result, the circuit court concluded (1) plaintiffs were not third-party beneficiaries of the policies, (2) plaintiffs had no implied private right of action for a violation of section 8.2(d)(3) of the Act, (3) the facts alleged in plaintiffs' complaints did not support the imposition of an implied-in-fact contract, and (4) the remedies contained in section 155 of the Insurance Code do not extend to purported third parties such as plaintiffs. The circuit court's order did not specifically address the Travelers defendants' challenge to the court's subject-matter jurisdiction or the Hartford defendants' challenge to the class allegations.

¶ 8     Plaintiffs filed timely notices of appeal from the dismissal of each of the four lawsuits on March 15, 2016. This court consolidated the appeals in an order entered on May 11, 2016.

¶ 9                                     II. ANALYSIS

¶ 10    On appeal, plaintiffs contend that the circuit court improperly dismissed their lawsuits, with prejudice, for failure to state claims. Before we can address the substantive merits of the

circuit court's dismissal of plaintiffs' complaints, however, we must first address defendants' contention that the circuit court lacked subject-matter jurisdiction to consider plaintiffs' claims because the Act "vests exclusive jurisdiction in the Commission to hear and determine direct claims under the Act."

¶ 11                           A. History and Scope of the Act

¶ 12    We first provide some context with respect to the history and scope of the Act, which will guide both our jurisdictional analysis and our subsequent discussion of the merits of the circuit court's dismissal of plaintiffs' claims.

¶ 13    In general terms, the Act:

"substitutes an entirely new system of rights, remedies, and procedure for all previously existing common law rights and liabilities between employers and employees subject to the Act for accidental injuries or death of employees arising out of and in the course of the employment. [Citation.] Pursuant to the statutory scheme implemented by the Act, the employee gave up his common law rights to sue his employer in tort, but recovery for injuries arising out of and in the course of his employment became automatic without regard to any fault on his part. The employer, who gave up the right to plead the numerous common law defenses, was compelled to pay, but his liability became fixed under a strict and comprehensive statutory scheme, and was not subjected to the sympathies of jurors whose compassion for fellow employees often led to high recovery. [Citation.] This trade-off between employer and employee promoted the fundamental purpose of the Act, which was to afford protection to employees by providing them with prompt and equitable compensation for their injuries." *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 180-81 (1978).

¶ 14    These purposes and goals have been effectuated in the various provisions of the Act, which when taken together represent a "comprehensive statutory administrative scheme." *Bradley v. City of Marion, Illinois*, 2015 IL App (5th) 140267, ¶ 15. Thus, the Act creates a new administrative agency, the Commission, and provides that the "Commission shall administer this Act." 820 ILCS 305/13 (West 2014). "All questions arising under [the] Act, if not settled by agreement of the parties interested therein, shall, except as otherwise provided, be determined by the Commission." 820 ILCS 305/18 (West 2014). This authority includes resolution of "[a]ny disputed questions of law or fact," which the Act provides will be initially decided following an administrative hearing before an arbitrator assigned by the Commission. 820 ILCS 305/19 (West 2014). Any decision entered by such an arbitrator is subject to review, first by the Commission and then by the circuit court. 820 ILCS 305/19(b), (f)(1) (West 2014).

¶ 15    The "compensation" allowed under the Act for accidental, non-fatal injuries includes both payment of lost wages (820 ILCS 305/8(b) (West 2014)), and payment for "all the necessary first aid, medical and surgical services, and all necessary medical, surgical and hospital services thereafter incurred, limited, however, to that which is reasonably required to cure or relieve from the effects of the accidental injury" (820 ILCS 305/8(a) (West 2014); *Bayer v. Panduit Corp.*, 2016 IL 119553, ¶ 30).

¶ 16    In order to protect an injured employee's ability to recover, an employer must demonstrate to the Commission sufficient proof of its financial ability to pay the compensation required by the Act. 820 ILCS 305/4 (West 2014). One way of doing so is for an employer to "[i]nsure his entire liability to pay such compensation in some insurance carrier authorized, licensed, or permitted to do such insurance business in this State." 820 ILCS 305/4(a)(3) (West 2014). "Every policy of an insurance carrier, insuring the payment of compensation under this

Act shall cover all the employees and the entire compensation liability of the insured ***." *Id.* Furthermore, "[i]n the event the employer does not pay the compensation for which he or she is liable, then an insurance company, association or insurer which may have insured such employer against such liability shall become primarily liable to pay to the employee, his or her personal representative or beneficiary the compensation required by the provisions of this Act to be paid by such employer. The insurance carrier may be made a party to the proceedings in which the employer is a party and an award may be entered jointly against the employer and the insurance carrier." 820 ILCS 305/4(g) (West 2014).

¶ 17    In addition to generally providing for the payment of compensation to employees, the Act also contains a number of provisions designed to encourage the "prompt" payment of compensation by an employer or insurer and to penalize any failure to make such prompt payment of compensation. See 820 ILCS 305/19(*l*), (k), 4(c) (West 2014). Additional such measures were included in amendments to the Act enacted in 2005 and 2011, to be discussed below.

¶ 18    In turn, the Act also contains the protections for employers discussed above. As such, it specifically states that "[n]o common law or statutory right to recover damages from the employer [or] his insurer" is available to "any employee who is covered by the provisions of this Act, to any one wholly or partially dependent upon him, the legal representatives of his estate, or any one otherwise entitled to recover damages for such injury." 820 ILCS 305/5(a) (West 2014). The Act therefore "provides that the statutory remedies under it shall serve as the employee's exclusive remedy if he sustains a compensable injury." *McCormick v. Caterpillar Tractor Co.*, 85 Ill. 2d 352, 356 (1981). "Under this comprehensive statutory administrative scheme, the legislature has vested exclusive original jurisdiction in the Commission over matters involving

an injured worker's rights to benefits under the Act and an employer's defenses to claims under the Act." *Bradley*, 2015 IL App (5th) 140267, ¶ 15. "The role of the circuit court in compensation proceedings is appellate only." *Hartlein v. Illinois Power Co.*, 151 Ill. 2d 142, 157 (1992).

¶ 19    In 2005, the Act "was amended, bringing significant changes to the Act which resulted from an extended negotiation between labor and business." Brad A. Elward, *Survey of Illinois Law: Workers' Compensation*, 34 S. Ill. U. L.J. 1107, 1110 (2010); Pub. Act 94-277 (eff. July 20, 2005). Of particular relevance here, the 2005 amendments included changes with respect to the payment for medical services for injured workers, implementing a medical fee schedule limiting the maximum amount that could be charged by a provider for covered medical services. Pub. Act 94-277, § 10 (eff. July 20, 2005) (adding 820 ILCS 305/8.2(a)).

¶ 20    The 2005 amendments also included relevant new procedures with respect to how and when medical services provided pursuant to the Act would be paid for, and the consequences for any late payments. Central to the claims at issue here, section 8.2(d) was added to that Act, which provided:

> "When a patient notifies a provider that the treatment, procedure, or service being sought is for a work-related illness or injury and furnishes the provider the name and address of the responsible employer, the provider shall bill the employer directly. The employer shall make payment and providers shall submit bills and records in accordance with the provisions of this Section. All payments to providers for treatment provided pursuant to this Act shall be made within 60 days of receipt of the bills as long as the claim contains substantially all the required data elements necessary to adjudicate the bills. In the case of nonpayment to a provider within 60 days of receipt of the bill which contained

substantially all of the required data elements necessary to adjudicate the bill or nonpayment to a provider of a portion of such a bill up to the lesser of the actual charge or the payment level set by the Commission in the fee schedule established in this Section, the bill, or portion of the bill, shall incur interest at a rate of 1% per month payable to the provider." Pub. Act 94-277, § 10 (eff. July 20, 2005) (adding 820 ILCS 305/8.2(d)).

¶ 21    Additional procedures were included in a new section 8.2(e) of the Act, which set limits upon the ability of providers to attempt to collect from injured employees while the compensability of medical services was being disputed before the Commission while also protecting providers' ability to ultimately receive payment by tolling any statute of limitations during any proceeding pending before the Commission. Pub. Act 94-277, § 10 (eff. July 20, 2005) (adding 820 ILCS 305/8.2(e)). Finally, a new section 8.2(e-20) provided:

"Upon a final award or judgment by an Arbitrator or the Commission, or a settlement agreed to by the employer and the employee *** the employee shall be responsible for payment of any outstanding bills for a procedure, treatment, or service rendered by a provider as well as the interest awarded under subsection (d) of this Section" Pub. Act 94-277, § 10 (eff. July 20, 2005) (adding 820 ILCS 305/8.2(e-20)).

¶ 22    In 2011, "significant statutory amendments were enacted to help reduce the overall cost of workers' compensation, which has been identified as a goal by the Illinois General Assembly to improve the business climate in the state." Brad A. Elward & Dana J. Hughes, *Survey of Illinois Law: Workers' Compensation*, 38 S. Ill. U. L.J. 775, 776 (2014); Pub. Act 97-18 (eff. June 28, 2011). Of relevance here, a significant portion of the cost reduction came by way of a 30% reduction in the amounts medical service providers were allowed to charge pursuant to the

medical fee schedule. Pub. Act 97-18, § 15 (eff. June 28, 2011) (amending 820 ILCS 305/8.2); 97th Ill. Gen. Assem., Senate Proceedings, May 28, 2011, at 34 (statements of Senator Raoul) (noting that changes to medical fee schedule represented "the most significant savings").

¶ 23    In order to alleviate concerns about the impact this reduction might have on medical service providers, the 2011 amendments also "shortened the period of time when interest and penalties can be assessed to employers that aren't paying medical bills on time." 97th Ill. Gen. Assem., Senate Proceedings, May 28, 2011, at 37 (statements of Senator Raoul). Thus, the Act was amended to provide that 1% interest would now begin to accrue on medical bills left unpaid after only 30 days and that "[a]ny required interest payments shall be made within 30 days after payment" of the unpaid bill. Pub. Act 97-18, § 15 (eff. June 28, 2011) (amending 820 ILCS 305/8.2(d)(3)).

¶ 24                                B. Subject-Matter Jurisdiction

¶ 25    We now turn to the question of the circuit court's jurisdiction to consider plaintiffs' claims. While only the Travelers defendants raised the issue of the circuit court's subject-matter jurisdiction below, and the circuit court did not address this argument in its order granting defendants' motions to dismiss, we are obligated to independently analyze the issue of the circuit court's subject-matter jurisdiction over plaintiffs' claims because the issue of subject-matter jurisdiction "cannot be waived, stipulated to, or consented to by the parties." *Bradley*, 2015 IL App (5th) 140267, ¶ 13.

¶ 26                                1. Standard of Review

¶ 27    "Subject-matter jurisdiction refers to a tribunal's power to hear and determine cases of the general class to which the proceeding in question belongs." *J&J Ventures Gaming, LLC v. Wild, Inc.*, 2016 IL 119870, ¶ 23. Under the Illinois Constitution of 1970, the circuit courts have

original jurisdiction over all justiciable matters, with the following two general exceptions: (1) the circuit courts have only such power to review administrative action as is provided by law, and (2) our supreme court has exclusive and original jurisdiction over questions relating to the redistricting of the General Assembly and the ability of the Governor to serve or resume office. Ill. Const. 1970, art. VI, § 9; *Crossroads Ford Truck Sales, Inc. v. Sterling Truck Corp.*, 2011 IL 111611, ¶ 27.

¶ 28    "The Illinois Constitution does not define the term 'justiciable matters.' " *McCormick v. Robertson*, 2015 IL 118230, ¶ 21. Nevertheless, it is generally understood that a " 'justiciable matter' is a controversy appropriate for review by the court, in that it is definite and concrete, as opposed to hypothetical or moot, touching upon the legal relations of parties having adverse legal interests." *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 335 (2002).

¶ 29    The "legislature may create new justiciable matters by enacting legislation that creates rights and duties that have no counterpart at common law or in equity." *Id.* Conversely, "our General Assembly may vest *original jurisdiction* in an administrative agency rather than the courts when it enacts a *comprehensive statutory scheme* that creates rights and duties that have no counterpart in common law or equity." (Emphases added.) *Zahn v. North American Power & Gas, LLC*, 2016 IL 120526, ¶ 14.

¶ 30    In the past, our supreme court has indicated that "if the legislative enactment does divest the circuit courts of their original jurisdiction through a comprehensive statutory administrative scheme, it must do so *explicitly*." (Emphasis added.) *Employers Mutual Cos. v. Skilling*, 163 Ill. 2d 284, 287 (1994). More recently, however, our supreme court has recognized that "legislative intent to divest circuit courts of jurisdiction and to place exclusive original jurisdiction in an

administrative agency may be discerned by considering the statute as a whole, with the relevant provisions construed together and not in isolation and with an eye toward the reason for the law, the problems sought to be remedied, and the purposes to be achieved." *Zahn*, 2016 IL 120526, ¶ 16 (citing *J&J Ventures Gaming, LLC*, 2016 IL 119870, ¶¶ 24-25). We therefore apply the more current, broader analysis described above in considering whether defendants correctly contend that the Act "vests exclusive jurisdiction in the Commission" to consider plaintiffs' claims. "This determination is a matter of statutory interpretation." *J&J Ventures Gaming, LLC*, 2016 IL 119870, ¶ 25.

¶ 31    Questions relating to the circuit court's jurisdiction and the interpretation of a statute both present issues of law, and we therefore review such questions *de novo*. *Id.*

¶ 32                                                  2. Discussion

¶ 33    First, there is no question that the four lawsuits at issue here generally present "justiciable matters." The question of the right and ability of plaintiffs to collect for "the statutory interest that accrued and is payable to them on bills that were paid by Defendants but after the Due Date, for services covered by the Act" is clearly "a controversy appropriate for review by the court, in that it is definite and concrete, as opposed to hypothetical or moot, touching upon the legal relations of parties having adverse legal interests." *Belleville Toyota, Inc.*, 199 Ill. 2d at 335.

¶ 34    The question thus becomes whether the legislature intended to divest circuit courts of jurisdiction and to place exclusive original jurisdiction in the Commission with respect to plaintiffs' claims. We discern no such intent.

¶ 35    It is abundantly clear that the Act represents a "comprehensive statutory administrative scheme." *Bradley*, 2015 IL App (5th) 140267, ¶ 15. It is also clear that "the legislature has vested exclusive original jurisdiction in the Commission over matters involving an injured worker's

rights to benefits under the Act." *Id.* However, this scheme is comprehensive and exclusive only with respect to the legal relationship between an injured *employee* and an *employer*. *Id.* ("Under this comprehensive statutory administrative scheme, the legislature has vested exclusive original jurisdiction in the Commission over matters involving an injured worker's rights to benefits under the Act and an employer's defenses to claims under the Act.").

¶ 36    Here, plaintiffs are medical service providers and defendants are workers' compensation insurers. Nothing in the Act, reading it as a whole and also considering the reasons for its enactment and amendment, indicates an intent that resolution of the type of claims brought by plaintiffs here was a task to be exclusively vested with the Commission. Plaintiffs' claims do not purport to seek any rights or benefits owed to an employee by an employer; rather, plaintiffs' claims purport to seek redress for the failure of defendants to fully and completely pay for services rendered by plaintiffs. See, *e.g.*, *Roche v. Travelers Property Casualty Insurance Co.*, No. 07-CV-302-JPG, 2008 WL 2875250, at *3 (S.D. Ill. July 24, 2008) (finding that the Act did not bar a lawsuit brought by a medical provider against workers' compensation insurers, because the provider was not asserting patient's right to insurance coverage under the Act; rather, lawsuit was based on providers purported right to compensation for the covered services provider had rendered).

¶ 37    In addition, "[t]he Commission is an administrative agency, and therefore, it has no general or common law powers. [Citation.] The Commission's powers are limited to those granted by the legislature, so that any action taken by the Commission must be specifically authorized by statute." *Alvarado v. Industrial Comm'n*, 216 Ill. 2d 547, 553 (2005). Moreover, "even a defectively stated claim is sufficient to invoke the court's subject-matter jurisdiction, as '[s]ubject matter jurisdiction does not depend upon the legal sufficiency of the pleadings.'

[Citation.] In other words, the *only* consideration is whether the alleged claim falls within the general class of cases that the court has the inherent power to hear and determine." (Emphasis in original.) *In re Luis R.*, 239 Ill. 2d 295, 301 (2010).

¶ 38 While we recognize that plaintiffs' claims all generally relate to and involve the interest provision contained in section 8.2(d) of the Act, we also note that—as pleaded and without any comment on the substantive merits of the claims—plaintiffs' complaint purports to assert three common law claims, as well as a statutory award of attorney fees and statutory damages pursuant to section 155 of the Illinois Insurance Code. Because those alleged claims fall within the general class of cases that the circuit court has the inherent power to hear and determine, while in contrast the Commission is not authorized to resolve such common law or statutory claims, and because we therefore discern no intent on the part of the legislature to divest the circuit court of its original jurisdiction with respect such claims, subject-matter jurisdiction is present. *Id.*

¶ 39 C. Dismissal of Plaintiffs' Claims

¶ 40 With the jurisdictional question answered, we may now address the substantive merits of the circuit court's dismissal of plaintiffs' claims with prejudice.

¶ 41 1. Standard of Review

¶ 42 "A section 2-615 motion to dismiss challenges the legal sufficiency of a complaint based on defects apparent on its face. [Citation.] In ruling on a section 2-615 motion, only those facts apparent from the face of the pleadings, matters of which the court can take judicial notice, and judicial admissions in the record may be considered." *K. Miller Construction Co. v. McGinnis*, 238 Ill. 2d 284, 291 (2010). All well-pleaded facts must be taken as true. *Unterschuetz v. City of Chicago*, 346 Ill. App. 3d 65, 68-69 (2004). Exhibits attached to the complaint are considered

part of the pleadings. *Bajwa v. Metropolitan Life Insurance Co.*, 208 Ill. 2d 414, 431 (2004). We review an order granting a section 2-615 dismissal *de novo*. *McGinnis*, 238 Ill. 2d at 291.

¶ 43    This appeal also requires us to construe the meaning of certain provisions of the Act. The rules applicable to this task are well-established and were outlined in *Hendricks v. Board of Trustees of the Police Pension Fund*, 2015 IL App (3d) 140858, ¶ 14:

> "The fundamental rule of statutory interpretation is to ascertain and give effect to the intent of the legislature. [Citation.] The most reliable indicator of that intent is the language of the statute itself. [Citation.] In determining the plain meaning of statutory language, a court will consider the statute in its entirety, the subject the statute addresses, and the apparent intent of the legislature in enacting the statute. [Citations.] If the statutory language is clear and unambiguous, it must be applied as written, without resorting to further aids of statutory interpretation. [Citation.] A court may not depart from the plain language of the statute and read into it exceptions, limitations, or conditions that are not consistent with the express legislative intent."

However, "[w]hen a statute is ambiguous, we look to aids of statutory construction, including legislative history." *BAC Home Loans Servicing, LP v. Mitchell*, 2014 IL 116311, ¶ 38. We review questions of statutory construction *de novo*. *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 267 (2003).

¶ 44                                2. Count I—Third-Party Beneficiary

¶ 45    Plaintiffs first contend that the circuit court improperly dismissed their contention that defendants breached contracts to which plaintiffs were intended third-party beneficiaries.

¶ 46    The legal framework guiding our analysis of this issue has been summarized as follows:

"The construction, interpretation, or legal effect of a contract is a matter to be determined by the court as a question of law. [Citation.] Our review is *de novo*. [Citation.] An individual not a party to a contract may only enforce the contract's rights when the contract's original parties intentionally entered into the contract for the direct benefit of the individual. [Citation.] There is a strong presumption that the parties to a contract intend that the contract's provisions apply only to them, and not to third parties. [Citation.] That the contracting parties know, expect, or even intend that others will benefit from their agreement is not enough to overcome the presumption that the contract was intended for the direct benefit of the parties. [Citation.]

Whether someone is a third-party beneficiary depends on the intent of the contracting parties, as evidenced by the contract language. [Citation.] It must appear from the language of the contract that the contract was made for the direct, not merely incidental, benefit of the third person. [Citation.] Such an intention must be shown by an express provision in the contract identifying the third-party beneficiary by name or by description of a class to which the third party belongs. [Citation.] If a contract makes no mention of the plaintiff or the class to which he belongs, he is not a third-party beneficiary of the contract. [Citations.] The plaintiff bears the burden of showing that the parties to the contract intended to confer a direct benefit on him." *Martis v. Grinnell Mutual Reinsurance Co.*, 388 Ill. App. 3d 1017, 1020 (2009).

¶ 47    After considering these legal principles, it is clear that plaintiffs are not intended third-party beneficiaries of the workers' compensation policies issued by defendants. Plaintiffs are, at best, incidental and not direct beneficiaries of those policies.

¶ 48    First, plaintiffs are not mentioned explicitly by name in the "standard policy" attached to the complaint, which plaintiffs contend is representative of all of the workers' compensation insurance policies issued by defendants. Conceding as much, plaintiffs rely upon language in the standard contract providing that defendants "will pay promptly when due the benefits required by you [employer] by the workers compensation law" and that defendants "are directly and primarily liable to any person entitled to benefits payable by this insurance."

¶ 49    However, this exact policy language was rejected as supporting a claim for third-party beneficiary status made by a medical provider against a workers' compensation insurer in *Martis*, 388 Ill. App. 3d at 1017. After noting that "medical providers are generally not third party beneficiaries of insurance policies, particularly workers' compensation policies," the court rejected a contention that this exact policy language mandated a different result. *Id.* at 1022. In part, the court came to this conclusion after noting that the plaintiff-provider was not named in the policy and concluding that medical providers were not entitled to "benefits" under the Act.

¶ 50    Plaintiffs insist that *Martis* should not be followed here because it did not expressly consider the interaction of the standard policy language with the new direct payment obligations created by the 2005 and 2011 amendments to the Act, which plaintiffs contend establish providers such as plaintiffs as being among those entitled to "benefits" under the Act. We disagree.

¶ 51    The "fundamental purpose of the Act [is] to afford protection to employees by providing them with *prompt* and equitable compensation for their injuries." (Emphasis added.) *Kelsay*, 74 Ill. 2d at 180-81; *Board of Education of the City of Chicago v. Industrial Comm'n*, 93 Ill. 2d 1, 14 (1982). The payment of necessary medical services is included among the total "compensation" or "benefits" owed by an employer to an *employee* suffering injuries arising out

of and in the course of his employment. *Bayer*, 2016 IL 119553, ¶ 30. In turn, the direct payment obligations created by the 2005 and 2011 amendments to the Act, including the interest required to be paid by section 8.2(d)(3), are among the many other provisions in the Act designed to encourage the "prompt" payment of compensation by an employer or insurer and to penalize any failure to make such prompt payment of compensation. *Supra* ¶ 17. As such, all of the provisions regarding the payment of medical care for injured employees discussed above—from the requirement that providers bill employers directly and employers pay providers directly, to the imposition of a medical fee schedule limiting the amount providers can charge for covered services, to the provisions seeking to ensure timely payment—are designed to ensure prompt and equitable payment of an injured employee's medical bills; *i.e.*, prompt and equitable payment of "benefits" owed to injured employees. As the legislature specifically indicated, the fee schedule and the interest provision contained in section 8.2(d) of the Act were designed to "hold down the cost of *** medical costs to injured workers" while doing so "in a way that does not harm the injured workers' ability to access quality health care." 94th Ill. Gen. Assem., Senate Proceedings, May 26, 2005, at 85 (statements of Senator Cronin).

¶ 52     In reaching this conclusion, we necessarily reject plaintiffs' contention that it is somehow significant that medical bills are paid directly to providers and any interest owed under section 8.2(d)(3) is also specifically "payable to the provider." 820 ILCS 305/8.2(d)(3) (West 2014). We find that what the Oklahoma Supreme Court said with respect to that state's workers' compensation statute applies equally here: "Not every valuable right under the Workers' Compensation Act is a 'benefit.' " *Holley v. Ace American Insurance Co.*, 2013 OK 88, ¶ 7, 313 P.3d 917, 920. The direct payment obligations do not alter the fact that payment for such medical services the payment of section 8.2(d)(3) interest to providers represent nothing more than the

legislature's efforts to ensure that the "compensation" or "benefits" owed to an injured employee under the Act are paid promptly.

¶ 53    Moreover, even if we accepted plaintiffs' contention that the direct payment obligations created by the 2005 and 2011 amendments to the Act entitled them to "benefits" under the Act, we would still reject their contention that they were intended third-party beneficiaries of the insurance policies issued by defendants. Again, it is not enough that "the contracting parties know, expect, or even intend that others will benefit from their agreement ***. *** It must appear from the language of the contract that the contract was made for the *direct*, not merely *incidental*, benefit of the third person." (Emphases added.) *Martis*, 388 Ill. App. 3d at 1020. From the above discussion, it is clear that any benefit granted to providers such as plaintiffs by the Act and/or the standard workers' compensation insurance policies issued by defendants was merely incidental.

¶ 54    In sum, plaintiffs had the burden of sufficiently pleading that defendants and the employers they insured intentionally entered into the standard contract for the direct, and not merely incidental, benefit of plaintiffs. Because they failed to do so, their claims that they were intended third-party beneficiaries were properly dismissed.

¶ 55               3. Count II—Implied Private Right of Action

¶ 56    Next, plaintiffs contend the circuit court improperly dismissed the contention that they had an implied private right of action for defendants' purported failure to comply with the interest provision of section 8.2(d)(3) of the Act.

¶ 57    "[A] court may determine that a private right of action is implied in a statute." *Metzger v. DaRosa*, 209 Ill. 2d 30, 35 (2004). "Implication of a private right of action is appropriate if: (1) the plaintiff is a member of the class for whose benefit the statute was enacted; (2) the plaintiff's

injury is one the statute was designed to prevent; (3) a private right of action is consistent with the underlying purpose of the statute; and (4) implying a private right of action is necessary to provide an adequate remedy for violations of the statute." *Fisher v. Lexington Health Care, Inc.*, 188 Ill. 2d 455, 460 (1999). All four factors must be met before a private right of action will be implied. *Abbasi v. Paraskevoulakos*, 187 Ill. 2d 386, 393 (1999); *McCarthy v. Kunicki*, 355 Ill. App. 3d 957, 969 (2005). Whether a private right of action is implied in a statute presents a question of law that we review *de novo. Metzger*, 209 Ill. 2d at 34.

¶ 58 With respect to the first factor, plaintiffs contend that because the payment obligations of section 8.2(d) of the Act are to medical providers such as themselves and to no one else, plaintiffs are members of the class benefited by the Act. We disagree.

¶ 59 In making this argument, plaintiffs focus solely and specifically upon the language of section 8.2(d) of the Act. However, our supreme court has made it clear that in conducting an analysis of this factor, "we must read the statute as a whole and not as isolated provisions." *Id.* at 37; *Fisher*, 188 Ill. 2d at 462-63. Where a particular provision of a statute provides incidental benefits to one class, but does so in order to benefit the "primary class" for whose benefit the statute was enacted, no private right of action will be implied in favor of the class provided such incidental benefits. *Id.*

¶ 60 This is exactly the situation presented here. As we noted above, the fundamental purpose of the Act is to afford protection to *employees* by providing them with *prompt* and equitable compensation for their injuries. *Supra* ¶ 13. And again, the interest required to be paid by section 8.2(d)(3) of the Act is but one of the many provisions in the Act designed to encourage the "prompt" payment of compensation by an employer or insurer and to penalize any failure to make such prompt payment of compensation. *Supra* ¶ 17. While providers *might* receive some

benefit from the specific interest provision contained in section 8.2(d)(3) of the Act, that benefit is *at most* incidental and was provided solely in an effort to serve the legislature's primary goal of compensating employees completely and promptly.

¶ 61    Because we conclude that plaintiffs are not members of the class for whose benefit the Act was enacted, their claim of an implied private right of action must fail due to the failure to satisfy the first factor of the analysis. *Abbasi*, 187 Ill. 2d at 393; *McCarthy*, 355 Ill. App. 3d at 969.

¶ 62                              4. Count III—Implied-In-Fact Contract

¶ 63    Plaintiffs next challenge the circuit court's dismissal of their contention that defendants breached an implied-in-fact contract to comply with the interest provision of section 8.2(d)(3) of the Act.

¶ 64    As this court has explained, contracts implied-in-fact "arise from a promissory expression that may be inferred from the facts and circumstances that demonstrate the parties' intent to be bound. *** A contract implied in fact *** is a true contract. [Citation.] The elements of a contract are an offer, acceptance, and consideration. [Citation.] Thus, a contract implied in fact contains all of the elements of a contract, including a meeting of the minds." *Trapani Construction Co. v. Elliot Group, Inc.*, 2016 IL App (1st) 143734, ¶¶ 41-42.

¶ 65    "Consideration is defined as the bargained-for exchange of promises or performances and may consist of a promise, an act or a forbearance." *Bishop v. We Care Hair Development Corp.*, 316 Ill. App. 3d 1182, 1198 (2000) (citing Restatement (Second) of Contracts § 71 (1981)). "Valid consideration, on the part of *both parties*, is one of the essential requirements for the formation of a contract." (Emphasis added.) *Agrimerica, Inc. v. Mathes*, 199 Ill. App. 3d 435, 441-42 (1990); *Moehling v. W.E. O'Neil Construction Co.*, 20 Ill. 2d 255, 265 (1960). "The

preexisting duty rule provides that where a party does what it is already legally obligated to do, there is no consideration as there is no detriment." *White v. Village of Homewood*, 256 Ill. App. 3d 354, 357 (1993). "Consideration cannot flow from an act performed pursuant to a preexisting legal duty." *Id.*; *Mulvey v. Carl Sandburg High School*, 2016 IL App (1st) 151615, ¶ 35.

¶ 66    In their complaints, plaintiffs allege that implied-in-fact contracts were formed whereby defendants "agreed to pay directly to Plaintiffs the benefits to which they were entitled from employers under the Act, including the accrued interest on Late Payments mandated by Section 8.2(d) of the Act" in exchange for plaintiffs' agreement to directly bill and communicate with defendants, as opposed to billing and communicating with the employers insured by defendants.

¶ 67    However, defendants also specifically acknowledge and assert in their complaints that under both "their insurance contracts and the Act, Defendants are obligated to comply with the prompt-pay provision and pay Providers the accrued interest to which they are entitled on late paid bills." See also *supra* ¶ 16 (discussing provisions of the Act requiring insurers such as defendants to insure the " 'entire compensation liability' " of insured employers). Plaintiffs' own complaints therefore concede that defendants' purported consideration for any asserted implied-in-fact contracts was to be performed pursuant to preexisting legal duties. Because valid consideration, on the part of *both parties*, is one of the essential requirements for the formation of a contract (*Mathes*, 199 Ill. App. 3d at 441-42), and because consideration cannot flow from an act performed pursuant to preexisting legal duty (*Mulvey*, 2016 IL App (1st) 151615, ¶ 35), the circuit court properly dismissed plaintiffs' claims that that defendants breached an implied-in-fact contracts to comply with the interest provision of section 8.2(d)(3) of the Act.

¶ 68                          5. Count IV—Section 155 of the Insurance Code

¶ 69    Finally, we consider plaintiffs' challenge to the circuit court's dismissal of their claims seeking an award of attorney fees and statutory damages under section 155 of the Insurance Code.

¶ 70    Section 155 states:

"In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus [certain penalties]." 215 ILCS 5/155(1) (West 2014).

¶ 71    However, our supreme court has recognized that "[a]s a general rule, the remedy embodied in section 155 of the Insurance Code extends only to the party insured [citation] and policy assignees [citations]. Therefore, the remedy embodied in section 155 of the Insurance Code does not extend to third parties." *Yassin v. Certified Grocers of Illinois, Inc.*, 133 Ill. 2d 458, 466 (1990); *Statewide Insurance Co. v. Houston General Insurance Co.*, 397 Ill. App. 3d 410, 426 (2009). Plaintiffs, being third-parties to the contracts between defendants and insured employers, and not named insureds or assignees, are not entitled to any recovery under section 155 of the Illinois Insurance Code.

¶ 72    In reaching this conclusion, we reject plaintiffs' reliance upon the decision in *Garcia v. Lovellette*, 265 Ill. App. 3d 724 (1994). In that case, the plaintiff argued she was a passenger in a car involved in an accident and, as a passenger, was thus an "insured" as defined in the medical payments section of an automobile insurance policy. *Id.* at 726. According to the plaintiff, she

therefore had standing to sue the insurer under section 155 of the Insurance Code for its unreasonable and vexatious delay in making such medical payments. *Id.* The court agreed, but only after concluding that: (1) plaintiff was in fact an "insured" under the applicable policy language, (2) "the insurer undertook an obligation to pay directly to those defined there[in] as insureds," (3) "the contract [there] was intended to benefit plaintiff directly as an insured and not merely incidentally" and, (4) therefore, "plaintiff, as the intended beneficiary of the insurance contract, has a sufficient legal and contractual relationship to the insurer to litigate the question whether she is entitled to the remedy provided by the statute." *Id.* at 728-29, 732.

¶ 73    The *Garcia* decision is inapposite here, where plaintiffs are not insureds or assignees under defendants' policies and, for all the reasons discussed above, they were no more than incidental beneficiaries of those policies and not intended third-party beneficiaries.

¶ 74                                    III. CONCLUSION

¶ 75    For the foregoing reasons, we affirm the circuit court's dismissal of plaintiffs' claims with prejudice.

¶ 76    Affirmed.