FIFTH DIVISION

November 30, 2001 

No. 1-00-3986

CITIZEN'S BANK – ILLINOIS, N.A., ) 

)

Plaintiff and Counterdefendant-Appellee , )

) 

) Appeal from the

) Circuit Court of

AMERICAN NATIONAL BANK AND TRUST ) Cook County. 

COMPANY OF CHICAGO, JUDITH WARREN, ) 

THOMAS A. WARREN, CHARANJEET ILLINOIS )

STATIONS NO. 6, INC., DARSHAN DHALIWAL, )

BULK PETROLEUM CORPORATION, and Unknown )

Owners and Non-Record Claimants, ) No. 99 CH 2235

) 

Defendants )

) 

)

(Charanjeet Illinois Stations No. 6 and )

Darshan Dhaliwal, ) Honorable

) Lester D. Foreman,

Counterplaintiffs-Appellants). ) Judge Presiding.

JUSTICE GREIMAN delivered the opinion of the court:

This appeal presents the question of whether the appellants adequately pled causes of action for breach of contract, an accounting, breach of obligations owed to third-party beneficiaries, and breach of fiduciary duties.  The trial court granted a motion to dismiss all four counts of the counterclaim pursuant to section 2-615 of the Illinois Code of Civil Procedure (735 ILCS 5/2-615 (West 2000)).  The trial court also denied the appellants leave to replead, holding that there was no set of facts upon which they could rely to recover on their counterclaim.  Accordingly, this appeal also presents the question of whether the trial court properly exercised its discretion in denying leave to replead.  For the reasons that follow, we affirm.

In 1988, Commercial National Bank of Berwyn extended a mortgage loan (the original mortgage) to an Illinois land trust.  American National Bank & Trust Co. of Chicago was the trustee of that land trust, and the beneficiaries were Tom and Judith Warren (individually, Judith and Tom, and collectively, the Warrens).  Berwyn Bank was the predecessor in interest to the appellee, Citizens Bank-Illinois, N.A. (Citizens) ("bank" will be used to refer to Berwyn Bank or Citizens, where appropriate).  The mortgaged property on South Cicero Avenue in Chicago (Cicero property) was then improved with a gas station / convenience store combination.

Five years later, the Warrens were divorced.  As a consequence of the divorce, Judith was awarded ownership of the mortgaged property.  The loan matured, and on April 1, 1993, the Warrens and the bank entered into a written loan and note modification agreement which provided for an extension and renewal of the mortgage debt and required Judith to make monthly tax escrow payments.

A few months after that, Judith and the trustee sold the Cicero property to Charanjeet Illinois Stations No. 6, Inc. (Charanjeet).  Darshan S. Dhaliwal (Dhaliwal), who is the president of Charanjeet, personally guaranteed Charanjeet's obligations under the sale (Charanjeet and Dhaliwal are hereinafter referred to collectively as Charanjeet, appellants, or the counterplaintiffs).  Judith and her land trust as sellers, Charanjeet as purchaser, and Dhaliwal as guarantor of the purchaser's obligation entered into articles of agreement for deed and purchase of assets (Articles).  The bank is not a party to the Articles but is mentioned as the lender on the outstanding mortgage loan because Judith and Charanjeet expressly provided that the installment payments by Charanjeet to Judith mirror the mortgage payments that Judith owed to the bank.  

Among the documents evidencing the original mortgage was an installment note.  That note contained a "due-on-sale" provision that called for the loan to be paid in full if the Warrens ever sold the property.  In recognition of the Warrens' obligations under this clause, Judith and Charanjeet sought the bank's consent before she closed the sale of the Cicero property to Charanjeet.  The bank agreed not to accelerate the debt as it was entitled to do under the due-on-sale provision.  

The bank executed a document (the Consent) evidencing its agreement not to call the loan, and it is this document about which the parties disagree.  Appellee states that the Consent is the only document to which the bank was a party with the appellants, and that it did not agree to be bound by any obligations in the Articles between the Warrens and Charanjeet.  Moreover, appellee claims that it did not release Judith from her obligations to the bank under the mortgage documents and, therefore, she was still required to make monthly tax escrow payments.  Consequently, the bank contends, appellants never assumed Judith's debt or other contractual responsibilities to the bank.  Rather, it claims that the bank merely accommodated the sale by Judith by waiving its right to invoke the due-on-sale provision, which would have required that all principal under the note be paid immediately at the time of sale.

Appellants, on the other hand, claim that the language of the Consent demonstrated that the bank acknowledged that Charanjeet assumed the obligations and certain contractual rights of Judith.  For this, it points to the first paragraph of the Consent, which states that Citizen's predecessor consented:

"[T]o the transactions evidenced by that certain Articles of Agreement for Deed and Purchase of Assets dated July 23, 1993, by and between Judith A. Warren, American National Bank & Trust Company of Chicago, not individually, but as ‛Trustee,' *** JJT Enterprises, Inc., Darshan S. Dhaliwal, and Charanjeet Illinois Stations No. 6, Inc."

Appellants note that in addition to acknowledging the underlying agreement by which obligations were assumed by Charanjeet, including the obligation to pay amounts determined by Citizens' predecessor for taxes, the bank agreed in a separate paragraph not to exercise its rights under "any prohibition against alienation or disposition" provided for in the original loan agreement.

Subsequent to July 23, 1993, Charanjeet made monthly payments directly to Citizens' predecessor, the Berwyn Bank, which were accepted and credited to Charanjeet.  These payments included amounts earmarked for principal and interest, but also included payments that were calculated and requested by the Berwyn Bank to be paid into the special tax escrow account maintained by the bank.  The bank accepted all of the payments made by or on behalf of Charanjeet and allegedly deposited the payments directed for taxes into the escrow account required by the loan modification agreement.  The amounts paid for the anticipated taxes were based on the calculations made by the bank based upon what it calculated would be needed to pay the applicable real estate taxes when they became due.

After the Berwyn Bank assigned its interest to Citizens, Citizens continued to accept the payments made by Charanjeet.  Like the Berwyn Bank, Citizens purportedly calculated all the amounts necessary for the payment of taxes and accepted the resulting payments from Charanjeet and deposited them into the tax escrow account.  Charanjeet claims that it reasonably relied on Citizens not only to calculate the amount necessary for tax purposes, but to deposit and hold the amounts paid into the tax escrow account.  Further, Charanjeet claims that it believed that Citizens was making the tax payments.  However, as a result of Citizens' methods of accounting, Charanjeet alleges that the bank did not place all amounts intended by Citizens for tax payments into the interest-bearing account and did not pay all taxes when they became due.  In fact, unbeknownst to Charanjeet, it alleges, taxes went unpaid on several occasions.

Charanjeet also claims that Citizens had full knowledge of Charanjeet's assumptions of Judith's obligations.  Citizens, it asserts, communicated freely with Charanjeet and its representatives regarding the outstanding loan obligations, amounts necessary for taxes, possible refinancing of the loan, and the possibility of Charanjeet moving all of its Illinois-based banking business to Citizens.

On July 1, 1998, pursuant to the terms of the promissory note, the remaining principal owed became due and payable.  As stated, however, Citizens solicited the refinancing of the loan and possible business from Charanjeet.  In response to these solicitations and in an effort to pay off the remaining outstanding balance due on the loan, Charanjeet allegedly requested a full and complete accounting from Citizens for all payments that had been received and credited by Berwyn and Citizens through July 1, 1998.  While Citizens and Charanjeet continued their discussions after July 1, 1998, Charanjeet continued to make and Citizens continued to accept regular monthly payments, including payments equal to the prior principal and interest amounts charged on the loan and payments for taxes which were intended to be placed in the interest-bearing tax escrow account.    

Subsequent to July 1, 1998, Charanjeet learned that Citizens had failed to properly monitor the tax escrow account and that the amounts that Citizens had calculated and requested to be paid into that account had been insufficient to pay all outstanding and accruing real estate taxes, or that Citizens had failed to properly deposit all amounts intended for the escrow account into the account.  Despite Charanjeet's attempts to obtain an accounting, Citizens refused to comply, contending that Charanjeet simply was not entitled to an accounting and that, as a result of at least two software changes at Citizens, such a detailed accounting and explanation could not be prepared under any circumstances.

On February 11, 1999, Citizens filed a complaint for mortgage foreclosure.  The complaint alleged that the defendants, including Charanjeet (which, as the bank concedes, had an equitable right of redemption in the property), owed delinquent real estate taxes, the outstanding principal, the accrued interest, the release fees, and the attorney fees and costs, less the amount the bank asserted that Charanjeet had contributed to the tax escrow. 

On March 9, 2000, appellants filed a counterclaim in which they argued that they were entitled to an equitable accounting of all amounts received by Citizens (count I) and recovery for breach of an agreement (count II).  In the alternative, they sought to recover for breach of obligations to a third-party beneficiary (count III) and for breach of fiduciary duties (count IV).  Appellants assert that they have alleged facts supporting their claims that Citizens "(i) failed to properly maintain with professional competence and due care the interest-bearing tax escrow account; (ii) failed to calculate correctly the amounts necessary to be paid into the escrow account for tax purposes; (iii) misapplied payments that were received by Citizens; (iv) failed to notify counter-claimants if additional amounts were necessary to pay outstanding taxes; (v) failed to pay accruing taxes; and (vi) failed to apply and credit all payments actually received."

Citizens moved to dismiss the entire counterclaim pursuant to section 2-615.  The court found that appellants did not have any form of a contract with Citizens and that Citizens owed no fiduciary duty to the appellants, because "there is no fiduciary relationship between a mortgagor and a mortgagee."  The court further found that there was no duty on the part of Citizens to provide any accounting to the appellants and dismissed the counterclaim in its entirety.  However, the court also went on to conclude that "under no set of facts could a plaintiff, and in this case could a counter-plaintiff be entitled to a remedy."  On September 13, 2000, the court dismissed the counterclaims "with prejudice" because it found that "there is no way in which the counter-plaintiff can cure the deficiencies which I find in this counterclaim."  The court also denied the appellants the right to replead, contending that there was no basis by which any claim could be asserted against Citizens by appellants.  

On October 26, 2000, in order to preserve its interest in the Cicero property, Charanjeet reached a stipulated agreement with Citizens as to an amount to be paid to satisfy Citizens' claims for the amounts owed to it.  Again, Citizens claims that this payment was for the amount due from Judith on the mortgage debt, but that Charanjeet was authorized to pay the debt for Judith under the Articles between them and Judith.  Accordingly, the foreclosure action was effectively resolved, and the underlying claims of Citizens were released.  This appeal addresses the issues raised by Charanjeet in its counterclaim.

"In Illinois, the standard of review on appeal from a motion to dismiss pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 1996)) is whether the complaint alleges sufficient facts which, if proved, would entitle the plaintiff to relief.  
Charles v. Seigfried
, 165 Ill. 2d 482, 485-86 (1995).  Our review is 
de novo
."  
Morris B. Chapman & Associates, Ltd. v. Kitzman
, 193 Ill. 2d 560, 568 (2000).  Moreover, this court may affirm the trial court's dismissal of the complaint on the pleadings on any basis in the record.  
Park Superintendents' Professional Ass'n v. Ryan
, 319 Ill. App. 3d 751, 757 (2001).

In the report of proceedings that was recorded on September 13, 2000, the trial court explained in detail its reasoning for dismissing each of the four counts that comprised Charanjeet's counterclaim.  As previously stated, however, on October 26, 2000, the court entered an additional order, pursuant to the parties' stipulation, to dismiss the bank's foreclosure complaint with prejudice and without costs.  Specifically, the parties' stipulation provided that since "[c]ertain defendants [namely, Charanjeet] made payments to Citizen's Bank[,] *** Citizen's Bank seeks no further relief under the Foreclosure Claim."  The parties entered into that stipulation pursuant to a payoff letter for the Cicero property, dated May 20, 1999, where the bank's prior counsel listed and described the amounts and payments due as a result of the mortgage foreclosure.  The payoff letter reads:

"The amounts due and owing are as follows:

 Principal $157,367.99

 Interest as of May 14, 1999         1,606.46

 Release Fees                     52.50

 Attorney's fees and costs as of April 30, 1999     7,183.40

 Estimated Attorney's fees for closing on May 26, 1999     1,250.00

Less Tax Escrow (3,954.06.)

TOTAL          
$135,763.18

    
Per diem
 interest after May 14, 1999 is 45.90."

On June 28, 1999, prior counsel for Charanjeet responded to the bank's counsel by letter and tendered the full amount requested in the Cicero payoff letter "as payment in full with respect to the *** foreclosure actio[n] filed by your client against the propert[y] which you and I have come to commonly call the Cicero Property *** located in Chicago, Illinois."  The submitted check also included "payment for all late fees, court costs, and attorneys fees as set forth in your letter *** of May 20, 1999, as well as 
per diem
 interest through June 24, 1999."  The letter concluded that if the bank was willing to accept this check as payment in full, counsel would expect the bank's counsel to forward him the dismissal of the foreclosure court proceeding against the Cicero property.  However, the letter is devoid of any indication that either Charanjeet or its counsel requested or even desired a further accounting or discovery of 
any
 of the obligations listed in the bank's payoff letter.

As evidenced by the October 26, 2000, order, this stipulation vanquished any rights the bank had in foreclosing the loan.  However, we also find that by accepting the terms of the stipulation, 
i.e.
, accepting and paying the full itemized amounts requested by the bank in its payoff letter, Charanjeet also relinquished any rights it may have had to demand an accounting or contest the figures provided in that payoff letter.  While it is true that the parties never entered into a formal written agreement concerning the resolution of the foreclosure action, Charanjeet's June 28, 1999, letter of acceptance of every term in the bank's payoff letter as well as its agreed stipulation make the intent of both parties clear: Charanjeet was willing to pay an uncontested amount to the bank in return for rights to the Cicero property.  We think that Charanjeet's desire to question the terms of the stipulation into which it entered is antithetical to the essence of its prior agreement.

Independent research has revealed the factually similar case of 
Charter Bank & Trust of Illinois v. Edward Hines Lumber Co.
, 233 Ill. App. 3d 574 (1992).  There, the bank brought an action for mortgage foreclosure.  Included as a defendant in its complaint was the holder of a mechanic's lien, which counterclaimed to foreclose its lien after the assignees of the mortgage were substituted as plaintiffs.  The circuit court entered judgment for the foreclosure of the mechanic's lien, and plaintiffs appealed.  
Hines Lumber
, 233 Ill. App. 3d at 575-76.  The bank argued, 
inter alia
, that the court erred in determining the amount of the lien.  
Hines Lumber
, 233 Ill. App. 3d at 579.  However, this court noted that the parties previously had entered into an agreed order that contained the stipulation of the amount of the mechanic's lien claim.  
Hines Lumber
, 233 Ill. App. 3d at 580.  Accordingly, it applied the well-established rule that "[g]enerally, a party cannot dispute on appeal matters to which he has stipulated."  
Hines Lumber
, 233 Ill. App. 3d at 580, citing 
Rockford Township Highway Department v. Illinois State Labor Relations Board
, 153 Ill. App. 3d 863, 874, 506 N.E.2d 390, 401 (1987).  Without a contention that the stipulation was unreasonable, was obtained by fraud, or otherwise violated public policy, the court found that the bank had no grounds upon which it could dispute the amount of the lien.  
Hines Lumber
, 233 Ill. App. 3d at 580, citing  
People v. Siems
, 170 Ill. App. 3d 894, 896, 523 N.E.2d 727, 729 (1988).

In the case at bar, both the bank and Charanjeet entered into an agreed order that contained the stipulation that the amount of payments made by Charanjeet to the bank satisfied the bank's demands with respect to its foreclosure claim.  Accordingly, under the general rule followed by 
Hines Lumber
, Charanjeet can no longer argue that the itemized amounts in the bank's payoff letter were inaccurate, where it previously stipulated that the payment of those amounts would satisfy all aspects of the bank's foreclosure claim, including late fees and the tax escrow.  Without any contentions by Charanjeet that the stipulation was unreasonable, was obtained by fraud, or otherwise violated public policy, we also find that it has no grounds upon which it could dispute the amount of the foreclosure claim.    

We believe that this, in turn, precludes Charanjeet from advancing –or ever advancing– any of the four counts raised in its counterclaim.  With regard to count I, Charanjeet argued that it was entitled to an accounting, mostly with respect to the amount of money it had tendered to the bank for the tax escrow and for late fees.  Initially, we note that had Charanjeet kept its own accurate records or decided to contact the Cook County treasurer's office, it could have easily determined the precise calculations it desired.  Moreover, we note that, for all purposes, Charanjeet eventually received an accounting of the outstanding balance of the obligations under the loan in the bank's payoff letter, yet never asked the bank to reveal the calculations behind that balance.  In any event, Charanjeet's claim of right to an equitable accounting is nothing more than a claim to conduct a veiled attack on the amounts to which it previously stipulated as satisfying the bank's foreclosure claim in its entirety, including late fees and the tax escrow. 

The remainder of Charanjeet's claims (
i.e.
, breach of agreement (count II), breach of obligations to a third-party beneficiary (count III), and breach of fiduciary duties (count IV)) also involve allegations that the bank miscalculated, misapplied, and/or misappropriated the funds that Charanjeet furnished it.  Indeed, for there to be a "breach" of a duty or contract, the party alleged to be at fault must have engaged in some activity that exceeded the bounds of that duty or contract in a way that was contrary to the intent or function of that duty or contract.  Here, Charanjeet's stipulation that the bank's foreclosure claim was satisfied by its payment of the amounts listed in the bank's payoff letter is a manifestation of its agreement that such amounts were satisfactory.  Accordingly, because of the general rule that "a party cannot dispute on appeal matters to which he has stipulated" (
Hines Lumber
, 233 Ill. App. 3d at 580), Charanjeet may not challenge the amounts upon which it previously agreed and consented were satisfactory.  Put another way, there can be no breach where Charanjeet stipulated that the amounts the bank requested were sufficient to dismiss the foreclosure claim in full.

Parenthetically, we believe that had Charanjeet not entered into the agreed-upon stipulation, it very well may have been able to plead the necessary elements for a cause of action in breach of an implied-in-fact contract.  A contract implied in fact is one whereby a contractual duty is imposed by a court by reason of some expression or promise that can be inferred from the facts and the circumstances.  
Sprowls v. First State Bank of Princeton, Illinois
, 225 Ill. App. 3d 672, 674 (1992) .  There must be an expression on the part of the promissor that shows an intention to be bound.  
Sprowls
, 225 Ill. App. 3d at 674. Viewing the facts in a light most favorable to the appellants, it does appear that a court could reasonably interpret these facts as evidencing an implied contract regarding, among other things, the tax escrow account.  As stated, however, because Charanjeet previously accepted the competency of the bank's calculations, it may not now dispute that matter.

For the foregoing reasons, we affirm the judgment of the circuit court.

Affirmed.

QUINN and REID, JJ., concur.