# Illinois Official Reports

## Appellate Court

***Marque Medicos Farnsworth, LLC v. Liberty Mutual Insurance Co.*,
2018 IL App (1st) 163351**

| | |
|---|---|
| Appellate Court Caption | MARQUE MEDICOS FARNSWORTH, LLC, and MEDICOS PAIN & SURGICAL SPECIALISTS, S.C., Plaintiffs-Appellants, v. LIBERTY MUTUAL INSURANCE COMPANY and ADVANCED URETHANE TECHNOLOGIES, INC., d/b/a/ REM Innovations, Inc., and/or Sleep Innovations, Inc., Defendants-Appellees. |
| District & No. | First District, Second Division<br>Docket No. 1-16-3351 |
| Filed | June 26, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-L-13457; the Hon. James E. Snyder, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Alan J. Mandel and Antonio D. Flores, of Alan J. Mandel, Ltd., of Skokie, for appellants.<br><br>John F. Boyle and Cathleen M. Hobson, of Law Offices of Meachum, Boyle & Trafman, of Chicago, for appellees. |
| Panel | PRESIDING JUSTICE MASON delivered the judgment of the court, with opinion.<br>Justices Pucinski and Hyman concurred in the judgment and opinion. |

**OPINION**

¶ 1     This case arises out of defendant-appellant Liberty Mutual Insurance Company's (Liberty) alleged failure to fully pay plaintiffs-appellees, Marque Medicos Farnsworth, LLC, and Medicos Pain & Surgical Specialists, S.C. (collectively, the providers), for services they rendered to an injured employee of codefendant-appellant, Advanced Urethane Technologies, Inc., d/b/a REM Innovations, Inc., and/or Sleep Innovations, Inc. (Sleep Innovations).[1] The trial court dismissed with prejudice the providers' claims for breach of contract, breach of contract implied in law, breach of contract implied in fact, and recovery under section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2012)). Because we conclude that the providers have no direct action against Liberty for its delay in paying medical bills, we affirm.

¶ 2                                   BACKGROUND

¶ 3     The providers filed suit against defendants in November 2013, alleging that they had not been paid for treatment they provided to Martha Llamas, an injured employee of Sleep Innovations. In their third amended complaint, at issue here, the providers alleged that Llamas suffered a work-related injury on March 25, 2009, for which they provided treatment between March 26, 2009, and January 26, 2011. At the outset of her treatment, Llamas authorized payment to be made directly to the providers for insurance benefits payable to her. Initially, the providers billed Sleep Innovations but were soon directed to submit their bills directly to Liberty, which issued the workers' compensation insurance policy to Sleep Innovations.

¶ 4     The insurance policy provides that Liberty would "pay promptly when due the benefits required of [Sleep Innovations] by the workers compensation law," and goes on to state that Liberty is "directly and primarily liable to any person entitled to the benefits payable by this insurance" and enforcement of this provision may be against Liberty or Sleep Innovations. The policy also prohibits Sleep Innovations from making payments, assuming obligations, or incurring expenses "except at [its] own cost."

¶ 5     On May 1, 2009, Llamas filed a claim before the Illinois Workers' Compensation Commission (IWCC) for disability benefits and medical expenses, which was ultimately settled in December 2012. The settlement agreement named Llamas as petitioner and Sleep Innovations as respondent, but left blank the space to name respondent's insurance or service company. The terms of the settlement provided that respondent would pay "all necessary and related medical expense pursuant to the fee schedule or negotiated rate, whichever is less, that have been submitted to respondent prior to contract approval." The settlement agreement was silent on the amount of medical bills outstanding as of the date of its execution. The complaint did not allege and the record does not disclose that, prior to the settlement, Liberty ever took the position that all or any portion of the medical expenses reflected in the bills sent to it were

_____

[1]This case is related to *Marque Medicos Archer, LLC v. Liberty Mutual Insurance Co.*, 2018 IL App (1st) 163350, also decided today, in which Marque Medicos Archer and Medicos Pain & Surgical Specialists, S.C., alleged that Liberty Mutual failed to fully pay for services the providers rendered to an injured employee of a different corporation. Because the causes of action asserted by the providers and dismissed by the trial court are not identical and because the parties did not move to consolidate the cases, we decide them separately.

not necessary or related to Llamas's injuries or that the documentation in the bills was insufficient.

¶ 6    Liberty eventually made late payments of medical bills in the amount of $80,000 to the providers, but over $5200 in bills are still outstanding. In addition, Liberty failed to pay any statutory interest on both the unpaid bills as well as the late paid bills, and the amount of interest due as of the date of the complaint exceeded $24,000.

¶ 7    Based on these allegations, the providers alleged four counts against both defendants: (1) breach of contract (based on the insurance policy), (2) violation of section 8.2(d) of the Workers' Compensation Act (Act) (820 ILCS 305/8.2(d) (West 2012)), (3) breach of contract implied in law, and (4) breach of contract implied in fact; one count was alleged only against Liberty, namely, recovery under section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2012)).

¶ 8    Defendants filed a motion to dismiss the complaint pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2012)). Ultimately, the trial court dismissed with prejudice the providers' claims for breach of contract, breach of contract implied in law, breach of contract implied in fact, and violation of section 155 of the Illinois Insurance Code. The providers timely appealed.

¶ 9                                      ANALYSIS

¶ 10    A motion to dismiss pursuant to section 2-615 of the Code of Civil Procedure challenges the legal sufficiency of a complaint based on defects apparent on its face. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). Examining the legal sufficiency of a complaint requires us to accept as true both well-pleaded facts and reasonable inferences that we can draw from those facts. *Id.* Further, we must construe the complaint's allegations in the light most favorable to the plaintiff. *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 305 (2008). A cause of action should not be dismissed unless there is no set of facts that can be proved that would allow recovery. *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 473 (2009). We review *de novo* an order dismissing a complaint under section 2-615. *Id.*

¶ 11    Turning first to the providers' claim for breach of contract, this is premised on the allegation that the providers are third-party beneficiaries of the workers' compensation policy issued by Liberty to Sleep Innovations. We answered this question in the negative in *Marque Medicos Fullerton, LLC v. Zurich American Insurance Co.*, 2017 IL App (1st) 160756, ¶¶ 1-4, in which medical providers who provided care to injured employees brought putative class actions against employers' workers' compensation insurers on the basis that their failure to timely pay for services violated the Act. We decline to depart from *Zurich* today.

¶ 12    There is a strong presumption against conferring contractual benefits on noncontracting third parties. *Barry v. St. Mary's Hospital Decatur*, 2016 IL App (4th) 150961, ¶ 82. To overcome this presumption, it is not sufficient if the parties know, expect, or even intend that others will benefit from the agreement (see *Estate of Willis v. Kiferbaum Construction Corp.*, 357 Ill. App. 3d 1002, 1008 (2005)); instead, the language of the agreement must show that the contract was made for the direct, not merely incidental, benefit of the third party (*Carson Pirie Scott & Co. v. Parrett*, 346 Ill. 252, 257 (1931)). This intention may be shown by an express provision in the contract identifying the third party by name or by a description of the class to which the third-party beneficiary belongs. *Martis v. Grinnell Mutual Reinsurance Co.*, 388 Ill. App. 3d 1017, 1020 (2009). The court in *Zurich* considered these principles and concluded that

- 3 -

medical providers are incidental rather than direct beneficiaries of workers' compensation policies. *Zurich*, 2017 IL App (1st) 160756, ¶ 53. We agree.

¶ 13    Significantly, the providers are not mentioned by name in the insurance contract attached to the complaint, nor does the policy contain a description of a class to which the providers belong. Just as in *Zurich*, we reject the providers' claims that the policy language providing that the insurer is " 'directly and primarily liable to *any person entitled to benefits payable by this insurance*,' " is sufficiently specific to constitute a class description. (Emphasis added.) *Id.* ¶ 48.

¶ 14    The providers attempt to distinguish *Martis*, on which *Zurich* relied, arguing that the *Martis* court did not consider how the policy language intersected with section 8.2(d) of the Act, which provides for payments for medical treatments and services directly to providers rather than the injured employee. See 820 ILCS 305/8.2(d) (West 2012). But the plaintiffs in *Zurich* made a similar attempt to distinguish *Martis*, which the court rejected, explaining that the fundamental purpose of the Act is to " 'afford protection to employees by providing them with prompt and equitable compensation for their injuries.' " (Emphasis omitted.) *Zurich*, 2017 IL App (1st) 160756, ¶ 51 (quoting *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 180-81 (1978)). The direct payment obligation of section 8.2(d) merely serves to further this purpose and ensure that injured employees receive prompt payment of benefits owed to them. *Id.* ¶ 52. Thus, the court held that even assuming the direct payment language entitled providers to benefits under the Act, these benefits were incidental and did not render them third-party beneficiaries of the insurance contract. *Id.* ¶ 53.

¶ 15    The existence of the settlement agreement between Llamas and Sleep Innovations does not alter our conclusion. The settlement agreement did not exist at the time Liberty issued Sleep Innovations the workers' compensation policy, and it is only the circumstances in existence at the time of execution of the contract that determines whether they intended to benefit a third party to the agreement. See *Carson Pirie Scott*, 346 Ill. at 258. In other words, to the extent that the settlement agreement confers a benefit on the providers, it does not follow that the workers' compensation policy was likewise intended to confer a benefit. The parties to the policy are different than those to the settlement agreement, and both documents were executed at different times for different purposes.

¶ 16    The providers next challenge the dismissal of their claim for breach of contract implied in law. A contract implied in law, also referred to as a quasi-contract, is not a contract at all, and exists independent of any agreement or consent of the parties. *Village of Bloomingdale v. CDG Enterprises, Inc.*, 196 Ill. 2d 484, 500 (2001). Instead, it is premised on an implied promise by the recipient of goods or services to pay for something of value that it has received. *Karen Stavins Enterprises, Inc. v. Community College District No. 508, County of Cook*, 2015 IL App (1st) 150356, ¶ 7. The cause of action is based on the principle that no one may unjustly enrich himself at another's expense. *Trapani Construction Co. v. The Elliot Group, Inc.*, 2016 IL App (1st) 143734, ¶ 41.

¶ 17    In order to state a cause of action for a breach of contract implied in law, a plaintiff must allege "specific facts in support of the conclusion that it conferred a benefit upon the defendant which the defendant has unjustly retained in violation of fundamental principles of equity and good conscience." *Karen Stavins Enterprises*, 2015 IL App (1st) 150356, ¶ 7. It is sufficient to note that the complaint alleges no facts specifying the benefit the providers bestowed on defendants; they provided a benefit—namely, medical services—only to the injured employee.

- 4 -

As such, the providers have failed to state a cause of action for breach of contract implied in law.

¶ 18 Nor have the providers stated a claim for breach of contract implied in fact. A contract implied in fact is imposed by the court where there is some expression or promise that can be inferred from the facts and circumstances. *Citizen's Bank-Illinois, N.A. v. American National Bank & Trust Co. of Chicago*, 326 Ill. App. 3d 822, 831 (2001). It contains all the elements of an express contract, namely, "an offer, a strictly conforming acceptance to the offer, and supporting consideration." *Brody v. Finch University of Health Sciences/The Chicago Medical School*, 298 Ill. App. 3d 146, 154 (1998).

¶ 19 At issue here is whether the providers adequately alleged the element of consideration. *Zabaneh Franchises, LLC v. Walker*, 2012 IL App (4th) 110215, ¶ 17 (" 'Valid consideration, on the part of both parties, is one of the essential requirements for the formation of a contract ***.' " (quoting *Agrimerica, Inc. v. Mathes*, 199 Ill. App. 3d 435, 441 (1990))). Consideration is a detriment to the offeror or benefit to the offeree, or "some bargained-for exchange between them." *Doyle v. Holy Cross Hospital*, 186 Ill. 2d 104, 112 (1999). Significantly, there is no consideration when a party promises to do what it is legally obligated to do. *Diederich Insurance Agency, LLC v. Smith*, 2011 IL App (5th) 100048, ¶ 12 (citing *White v. Village of Homewood*, 256 Ill. App. 3d 354, 357 (1993)).

¶ 20 Here, just as in *Zurich*, the providers allege that an implied in fact contract was formed in which defendants agreed to pay Llamas's medical bills and any statutory interest directly to the providers in exchange for the providers' agreement to follow the defendants' "instructions regarding billing." But in the providers' complaint, they allege that defendants were obligated under the insurance contract and the Act to pay Llamas's medical bills and statutory interest. Because acts performed pursuant to preexisting legal duties cannot constitute valid consideration and because valid consideration on the part of both parties is necessary for the formation of a contract, the providers have not stated a claim for breach of contract implied in fact. See *Zurich*, 2017 IL App (1st) 160576, ¶¶ 66-67.

¶ 21 Finally, the providers allege a cause of action pursuant to section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2012)). Section 155 provides:

"In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus [certain penalties.]" *Id.*

¶ 22 Our supreme court has held that the section 155 remedies extend only to the insured party and assignees of the insurance policy, and not to third parties. *Zurich*, 2017 IL 160756, ¶ 71 (citing *Yassin v. Certified Grocers of Illinois, Inc.*, 133 Ill. 2d 458, 466 (1990)). This long-standing rule prompted the court in *Zurich* to conclude that medical providers, as third-parties to the contracts between the insurer and insured employers, are not entitled to recover under section 155 of the Illinois Insurance Code. *Id.* We agree.

¶ 23 The *Zurich* court distinguished *Garcia v. Lovellette*, 265 Ill. App. 3d 724 (1994), on which the providers here also rely. *Zurich*, 2017 IL App (1st) 160756, ¶ 72. In *Garcia*, the plaintiff, a passenger in the defendant insured's car at the time of an accident, argued that she was entitled to recovery under section 155 for the insurer's allegedly unreasonable and vexatious delay in

paying her medical bills. *Garcia*, 265 Ill. App. 3d at 725-26. The insurer contended that the plaintiff was a third-party claimant and, as such, lacked standing to bring a cause of action pursuant to section 155. *Id.* at 726. This court disagreed, based on the fact that the insurance policy defined an occupant of the named insured's car as an insured, thereby entitling the plaintiff to bring a section 155 claim. *Id.* at 728. Here, in contrast, the policy does not name the providers as insureds, and we have already concluded that they are not third-party beneficiaries of the policy. It is irrelevant that Llamas assigned her rights to collect insurance benefits to the providers, as Llamas, too, is not an insured under the workers' compensation policy.

¶ 24     The conclusion we reach today should not be construed to mean that we condone Liberty's conduct in failing to pay outstanding medical bills and interest as it is obligated to do under both the Act and its insurance policy. Accepting the well-pled allegations of the providers' complaint as true, Liberty's conduct in (i) accepting premiums under a policy of insurance that renders it "directly and primarily liable" for benefits payable under the Act, (ii) authorizing a settlement agreement that plainly contemplates payment of those benefits, and (iii) claiming after the fact that no benefits are payable threatens the stability and predictability of benefits the Act is designed to provide. See *McMahan v. Industrial Comm'n*, 183 Ill. 2d 499, 514 (1998) ("The refusal of an employer to pay for an injured employee's medical expenses is as contrary to the purposes of the [Act] as an employer's refusal to compensate the employee for lost earnings. *** Indeed, to the extent that nonpayment of medical expenses may imperil the employee's ability to obtain future treatment, the consequences of the employer's actions may actually be far worse."). Many employees, like Llamas, accept a lump sum settlement to cover not only past medical care but also medical care reasonably anticipated to be necessary in the future. But if a workers' compensation carrier can authorize a settlement whereby the employer undertakes to pay past due bills and then fail to remit policy proceeds to cover that obligation, the pool of medical providers willing to render services to patients suffering work-related injuries will necessarily diminish.

¶ 25     During oral argument, counsel for Liberty took the position that Sleep Innovation's commitment in the settlement agreement "to pay all necessary and related medical expenses" was essentially illusory. This is because Liberty, to whom all of the medical bills had been submitted and who was obligated to "promptly" pay those bills, had not agreed that the medical expenses incurred by Llamas were "necessary and related." In other words, Liberty's position is that it may remain silent when medical bills are submitted directly to it, authorize its policyholder to enter into a settlement whereby the policyholder undertakes to pay those outstanding bills, and then leave both its policyholder and the injured worker on the hook for unpaid bills after the fact.

¶ 26     We do not read the Act as giving Liberty the option to refrain from raising any issues regarding the reasonableness of bills submitted to it until after its policyholder has, with its approval, committed to pay them. Rather, the Act contemplates that when an insurer receives bills allegedly relating to a work-related injury, the insurer will promptly raise any issues regarding whether the services rendered were reasonable and related to the employee's injury or whether the detail in the bills is insufficient to make that determination. 820 ILCS 305/8.2(d) (West 2012). As far as the record here discloses, Liberty never raised any such issues after receipt of bills from Marque Medicos Farnsworth, LLC.

¶ 27     Accepting the complaint's allegations as true, as we must, such conduct appears to be a textbook example of "vexatious and unreasonable" claims handling practices under section

- 6 -

155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2012)). In a companion case decided today, *Marque Medicos Archer, LLC v. Liberty Mutual Insurance Co.*, 2018 IL App (1st) 163350, ¶¶ 5-6, we discussed that, as alleged in the complaint in that case, the Director of Insurance conducted a market conduct examination of Liberty's claims handling practices specifically related to the payment of interest on adequately documented provider bills and that, as a result, Liberty entered into a stipulation and consent order whereby Liberty committed to institute and maintain procedures for the payment of interest. We take judicial notice here of the results of the market conduct examination. *In re Nylani M.*, 2016 IL App (1st) 152262, ¶ 36 ("A court may take judicial notice of matters generally known to the court and not subject to reasonable dispute."). The Director of Insurance should pay close attention to whether Liberty is, in fact, living up to its obligations under the stipulation and consent order. To that end, we are directing the clerk of the court to send a copy of the opinion to the Director of Insurance.

¶ 28     But as egregious as Liberty's conduct appears to be, it does not translate into recognition of a direct action by providers against Liberty. Rather, when the legislature enacted section 8.2 of the Act by amendment in 2011, it simultaneously created a remedy for its violation. In particular, section 8.2(e-20) provides that after a final award by the IWCC, a provider may resume efforts to collect unpaid bills from the employee and "the employee shall be responsible for payment of any outstanding bills *** as well as the interest awarded under subsection (d) of this Section." 820 ILCS 305/8.2(e-20) (West 2012). At first blush, the ability to pursue the injured employee for payment of outstanding medical bills appears to run counter to the overarching purpose of the Act to protect the interests of injured workers. But the legislature may well have assumed that an employee who receives an award from the IWCC is the party responsible for paying outstanding medical bills from the award. When, as here, that is not the case, the methods of enforcing a workers' compensation carrier's obligation to pay outstanding medical bills are varied and somewhat circuitous.

¶ 29     Under the Act, the IWCC lacks authority to enforce its own awards and decisions. *Millennium Knickerbocker Hotel v. Illinois Workers' Compensation Comm'n*, 2017 IL App (1st) 161027WC, ¶ 21 (citing *Smith v. Gen Co.*, 11 Ill. App. 3d 106, 110 (1973)). Therefore, in order to enforce an employer's obligation to pay an award, the employee must look elsewhere.

¶ 30     One possible scenario is that when the providers pursue payment of outstanding bills from the employee, the employee, in an effort to enforce the IWCC award, can present a certified copy of the award to the circuit court under section 19(g) of the Act (820 ILCS 305/19(g) (West 2012)), in order to reduce the award to judgment. The employer, upon whom the obligation to pay is imposed under the award (and the judgment entered on the award), can, in turn, pursue a third-party action against its insurer for breach of the workers' compensation insurance policy and, presumably, for a violation of section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2012)). If the circuit court finds that there has been a failure to pay the employee in accordance with the IWCC award, section 19(g) further mandates an award of attorney fees and costs incurred by the employee not only in the circuit court action but also in the proceedings before the IWCC.

> "In a case where the employer refuses to pay compensation according to such final award or such final decision upon which such judgment is entered the court *shall* in entering judgment thereon, tax as costs *** the reasonable costs and attorney fees in the arbitration proceedings and in the court entering the judgment for the person in whose

- 7 -

favor the judgment is entered \*\*\*." (Emphasis added.) 820 ILCS 305/19(g) (West 2012).

And the fees and costs recovered by the employee as well as the employers' own attorney fees and costs would be compensable damages proximately caused by the insurer's breach of contract. In the end, the recalcitrant insurer would end up paying its own, its insured's and the employee's attorney fees and costs, plus whatever sums the court deemed appropriate under section 155. See 215 ILCS 5/155(1) (West 2012) (providing for an award of up to $60,000 in addition to attorney fees and costs). Accordingly, the price of an insurer's decision to stonewall payment of benefits due under an IWCC award is, indeed, steep.

¶ 31    Alternatively, there are two provisions of the Act that provide for the award by the IWCC of additional compensation to the employee in the case of nonpayment of benefits. First, section 19(k) of the Act authorizes the employee to seek and the IWCC to award additional compensation equal to 50% of the amount otherwise payable to the employee if the employer vexatiously delays in paying benefits due under the Act. 820 ILCS 305/19(k) (West 2012). In the event the IWCC determines that a penalty is appropriate under section 19(k), section 16 of the Act further authorizes an award of attorney fees and costs "against such employer *and his or her insurance carrier*." *Id.* § 16. Second, section 19(*l*) contemplates that an employee may file a written demand for payment of benefits for necessary medical care payable under section 8(a). *Id.* § 19(*l*). In the event of such written demand, the employer must respond within 30 days, articulating in writing the reason for the delay. Section 19(*l*) further provides:

> "In case the employer *or his or her insurance carrier* shall without good and just cause fail, neglect, refuse, or unreasonably delay the payment of benefits under Section 8(a) \*\*\*, the Arbitrator or the Commission shall allow to the employee additional compensation in the sum of $30 per day for each day that the benefits under Section 8(a) \*\*\* have been so withheld or refused, not to exceed $10,000." (Emphasis added.) *Id.*

¶ 32    What is common to all of these alternative courses of action is that they must be undertaken by the employee for whose benefit these provisions were enacted. Which brings us to another, less circuitous means of avoiding this problem in the future. Attorneys handling workers' compensation cases on behalf of claimants must be cognizant of their clients' potential post-award exposure to claims by medical providers for unpaid bills. As noted, if, as happened here (and apparently in a number of other cases involving Liberty), the employer does not fulfill its undertaking to pay outstanding medical bills, providers are permitted to pursue payment from the injured employee. With that in mind, competent counsel should insist that any settlement agreement contain a sum certain that the employer has agreed to pay for outstanding medical bills and also contain a representation that the employer has consulted with its insurance carrier and secured the carrier's commitment to pay that amount upon execution of the settlement. The settlement here contained no such detail and merely provided that Sleep Innovations "will pay all necessary and related medical expenses \*\*\* that have been submitted prior to contract approval and that contain all the required data elements." This lack of specificity permitted Liberty to "lay in the weeds" to the employee's, the providers' and, ultimately, its own policyholder's detriment.

¶ 33                         CONCLUSION

¶ 34        We affirm the trial court's dismissal of the providers' claims for breach of contract, breach of contract implied in law, breach of contract implied in fact, and recovery pursuant to section 155 of the Illinois Insurance Code.   We further order the clerk of the court to send a copy of this opinion to the Director of Insurance.

¶ 35        Affirmed.