NOTICE
Decision filed 11/21/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 210394-U

NO. 5-21-0394

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| MIDWEST NEUROSURGEONS, LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Williamson County. |
| | ) | |
| v. | ) | No. 21-L-81 |
| | ) | |
| MARY ELLEN ABELL, | ) | Honorable |
| | ) | Jeffrey A. Goffinet, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Justices Welch and Cates concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the circuit court's dismissal of medical provider's breach of contract action, where medical provider was not a third-party beneficiary to a settlement contract entered into by employer and employee pursuant to the Workers' Compensation Act.

¶ 2    Plaintiff, Midwest Neurosurgeons, LLC (Midwest), filed a breach of contract action against defendant, Mary Ellen Abell, seeking to recover the costs of medical services and treatment Midwest provided to Abell's employee, Cheryl Lyell. Midwest alleged that it was a third-party beneficiary to a settlement contract entered into by Abell and Lyell, wherein Abell and Lyell agreed to settle Lyell's claim filed pursuant to the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2020)). Abell filed a motion to dismiss pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619 (West 2020)), arguing, *inter alia*,

1

that the Act prohibited medical providers from maintaining private causes of action against employers for medical services provided to employees who filed claims pursuant to the Act. The Williamson County circuit court granted Abell's motion and dismissed Midwest's action for failure to state a claim. Midwest appeals, arguing that the court erred by granting the motion to dismiss because it pled a recognized cause of action under Illinois law. We affirm.

¶ 3                              I. Background

¶ 4     On February 25, 2011, Lyell sustained work-related injuries. Lyell filed a claim against Abell pursuant to the Act seeking benefits for her injuries. While her claim remained pending, Lyell received medical care and treatment for her injuries at Midwest on multiple dates in 2011.

¶ 5     On February 14, 2013, Abell and Lyell entered into a settlement contract, wherein they agreed to settle Lyell's claim arising under the Act. The Illinois Workers' Compensation Commission (Commission) approved the settlement contract on February 15, 2013. Neither Abell nor Lyell filed a petition for review of the Commission's approval of the settlement contract.

¶ 6     On July 2, 2021, Midwest filed a breach of contract claim against Abell seeking to recover the costs of the medical services and treatment that it provided to Lyell in 2011. Midwest alleged that it was an intended third-party beneficiary of the settlement contract, wherein Abell agreed to "pay, directly to the providers, the causally-related medical expenses incurred up to 9/26/12." In support, Midwest attached to the complaint a redacted copy of the settlement contract, which included the following provision:

   "Respondent agrees to pay, directly to the providers, the causally-related medical expenses
   
   incurred up to 9/26/12, [redacted]. Respondent also agrees to pay, directly to the provider,
   
   the unpaid medical expense incurred prior to the date of settlement at Neurology of Southern

2

Illinois, Ltd. (Dr. Lori M. Guyton). All medical expenses will be paid pursuant to pre-arranged cost-containment agreements or the Illinois Medical Fee Schedule."

Midwest further alleged in the complaint that Abell breached the settlement contract by failing to pay Lyell's medical expenses and that, as a direct result of Abell's breach, it incurred damages in the amount of $67,438.97, "plus interest at the rate of 1% per month that began to accrue as set forth in 820 ILCS 305/8.2." Midwest alleged that the accrued interest on the unpaid medical bills totaled $79,569.29 at the time the complaint was filed and, thus, requested that the circuit court enter judgment against Abell for the sum of $147,053.26. In support, Midwest referenced and attached a document that listed, *inter alia*, the following information: the service and billing dates for the medical treatment Lyell received at Midwest; the total amount billed for the services; the insurance payments Midwest received; and interest calculations.

¶ 7    On October 1, 2021, Abell filed a motion to dismiss pursuant to sections 2-615 and 2-619 of the Code arguing, *inter alia*, that the Act prohibited medical providers, such as Midwest, from maintaining private causes of action against employers for medical services provided to employees who filed claims pursuant to the Act. On October 12, 2021, Midwest filed a response arguing that it adequately pled its status as an intended third-party beneficiary to the settlement contract and that its breach of contract claim was a viable, recognized claim under Illinois law. On October 27, 2021, Abell filed a reply reiterating her argument that Midwest had no direct cause of action against her as Lyell's employer.

¶ 8    On October 29, 2021, the circuit court held a hearing on Abell's motion to dismiss where the parties presented arguments consistent with the previous filings. After considering the parties' arguments, the court stated that it was unable to locate legal authority in support of Midwest's

3

position that a medical provider was allowed to maintain a direct action against an employer for medical services provided to an employee who filed a claim under the Act. The court permitted Midwest to submit a memorandum to provide further law on the issue.

¶ 9    On November 5, 2021, Midwest submitted its memorandum arguing that Illinois law recognized third-party breach of contract claims, and that no provision of the Act expressly prohibited medical providers from recovering from employers amounts of medical services that employers contractually agreed to pay. Midwest further argued that the settlement contract did not violate public policy, and that dismissal of the claim would frustrate the purpose of the Act.

¶ 10   On November 8, 2021, the circuit court granted Abell's motion and dismissed the matter for failure to state a cause of action. The record on appeal does not include a written order but contains a docketing entry setting forth the court's ruling. In the docket entry, the court indicated that it was unable to locate legal precedent that allowed a medical provider to maintain a direct action against an employer for medical services provided to an employee who filed a claim under the Act. The court acknowledged, but disagreed with, Midwest's arguments that it was a third-party beneficiary to the settlement contract and that there was no law prohibiting such cause of action. The court declined to create a cause of action or make law that would allow a medical provider, who was not expressly named in a settlement contract, to bring a direct action against an employer as a third-party beneficiary. The court acknowledged that there may be policy reasons for allowing such cause of action but concluded that such matters were better suited to the legislature. Midwest timely appealed.

¶ 11                                 II. Analysis

¶ 12   "A motion to dismiss pursuant to section 2-615 attacks the sufficiency of the complaint

4

and raises the question of whether the complaint states a claim upon which relief can be granted." *Tielke v. Auto Owners Insurance Co.*, 2019 IL App (1st) 181756, ¶ 22 (citing *Burton v. Airborne Express, Inc.*, 367 Ill. App. 3d 1026, 1029 (2006)). "A section 2-619 motion to dismiss admits the legal sufficiency of the plaintiff's complaint but raises defects, defenses, or other affirmative matters that appear on the face of the complaint or that are established by external submissions acting to defeat the complaint's allegations." *Id.* (citing *Burton*, 367 Ill. App. 3d at 1029).

¶ 13 The standard of review of motions to dismiss under either section 2-615 or section 2-619 is *de novo*. *Neppl v. Murphy*, 316 Ill. App. 3d 581, 583 (2000). In addition, because this court reviews the circuit court's judgment, not its rationale, we may affirm for any reason supported by the record regardless of the basis cited by the circuit court. *D'Attomo v. Baumbeck*, 2015 IL App (2d) 140865, ¶ 30.

¶ 14 "To establish a breach of contract, a plaintiff must show the existence of a valid and enforceable contract, performance of the contract by the plaintiff, breach of the contract by the defendant, and resulting injury to the plaintiff." *Barry v. St. Mary's Hospital Decatur*, 2016 IL App (4th) 150961, ¶ 78 (citing *Sherman v. Ryan*, 392 Ill. App. 3d 712, 732 (2009)). An individual not a party to a contract may only enforce the contract's rights when the contract's original parties intentionally entered into the contract for the direct benefit of the individual. *Swavely v. Freeway Ford Truck Sales, Inc.*, 298 Ill. App. 3d 969, 973 (1998). There is a strong presumption that the parties to a contract intend that the contract's provisions apply only to them, and not to third parties. *Barney v. Unity Paving, Inc.*, 266 Ill. App. 3d 13, 19 (1994). That the contracting parties know, expect, or even intend that others will benefit from their agreement is not enough to overcome the presumption that the contract was intended for the direct benefit of the parties. *Id.*

5

¶ 15    Whether someone is a third-party beneficiary depends on the intent of the contracting parties, as evidenced by the contract language. *F.H. Paschen/S.N. Nielsen, Inc. v. Burnham Station, L.L.C.*, 372 Ill. App. 3d 89, 96 (2007). It must appear from the language of the contract that the contract was made for the direct, not merely incidental, benefit of the third person. *Gallagher Corp. v. Russ*, 309 Ill. App. 3d 192, 200 (1999). Such an intention must be shown by an express provision in the contract identifying the third-party beneficiary by name or by description of a class to which the third party belongs. *Holmes v. Federal Insurance Co.*, 353 Ill. App. 3d 1062, 1066 (2004).

¶ 16    Here, the settlement contract specifically referenced the medical bills incurred by Lyell for treatment she received at Neurology of Southern Illinois, Ltd., but the contract did not specifically reference the medical bills incurred by Lyell at Midwest. As such, Midwest was not specifically identified in the contract by name as an intended beneficiary.

¶ 17    Midwest alleged in the complaint that it was an intended third-party beneficiary of the settlement contract because Abell agreed to "pay, directly to the providers, the causally-related medical expenses incurred up to 9/26/12." Midwest further alleged that it provided medical treatment to Lyell for her work-related injuries on multiple dates in 2011. Thus, at first glance, it appears the allegations in Midwest's complaint, taken as true, demonstrated that the settlement contract identified Midwest by description of a class to which Midwest belongs—a medical provider that provided treatment to Lyell prior to September 26, 2012.

¶ 18    We note, however, that Abell and Lyell entered into the contract at issue to settle Lyell's claim arising under the Act. See *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 180-81 (1978) (the fundamental purpose of the Act is "to afford protection to employees by providing them with

6

prompt and equitable compensation for their injuries"). The contractual provision providing for payment of medical expenses directly to Lyell's medical providers merely restates a provision of the Act. Specifically, section 8.2(d) of the Act provides that "[t]he employer or its designee shall make payment for treatment in accordance with the provisions of this Section directly to the provider, except that, if a provider has designated a third-party billing entity to bill on its behalf, payment shall be made directly to the billing entity." 820 ILCS 305/8.2(d) (West 2020). The direct payment obligation set forth in section 8.2(d) simply serves to further the fundamental purpose of the Act and ensure that injured employees receive prompt payment of benefits owed to them for work-related injuries. See *Marque Medicos Farnsworth, LLC v. Liberty Mutual Insurance Co.*, 2018 IL App (1st) 163351, ¶ 14 (citing *Marque Medicos Fullerton, LLC v. Zurich American Insurance Co.*, 2017 IL App (1st) 160756, ¶ 52). Thus, despite the inclusion of the general direct payment language, we conclude that the contract at issue was made for the direct benefit of Lyell and that any benefit to Midwest was incidental. Our interpretation of the contract is supported by the fact that Abell specifically agreed to pay the medical expenses incurred at Neurology of Southern Illinois, Ltd. without reference to the medical expenses incurred at Midwest.

¶ 19    This interpretation of the settlement contract is also consistent with other provisions of the Act pertaining to the nonpayment of medical expenses. Section 8.2(e-20) of the Act provides as follows:

"Upon a final award or judgment by an Arbitrator or the Commission, or a settlement agreed to by the employer and the employee, a provider may resume any and all efforts to collect payment *from the employee* for the services rendered to the employee and the employee shall be responsible for payment of any outstanding bills for a procedure, treatment, or service

7

rendered by a provider as well as the interest awarded under subsection (d) of this Section." (Emphasis added.) 820 ILCS 305/8.2(e-20) (West 2020).

Our supreme court considered section 8.2(e-20) under slightly different circumstances in *In re Hernandez*, 2020 IL 124661, ¶ 23. In doing so, our supreme court noted that section 8.2(e-20) permits "health care providers to seek payment directly from an injured employee for outstanding bills plus interest *** after a settlement agreement is reached between the employer and the employee." *Id.* Our supreme court noted, however, that "nothing in section 8.2(e-20) permits health care providers to look to the workers' compensation award, judgment, or settlement itself as a source of payment." *Id.*

¶ 20    Accordingly, section 8.2(e-20) allowed Midwest to resume efforts to collect payment from Lyell for unpaid medical expenses following the settlement agreement. As Abell correctly notes, Lyell could, in turn, file an action to enforce the settlement agreement pursuant to section 19(g) of the Act (820 ILCS 305/19(g) (West 2020)). See *Millennium Knickerbocker Hotel v. Illinois Workers' Compensation Comm'n*, 2017 IL App (1st) 161027WC, ¶ 21 (noting that "the only method to enforce a final award of the Commission is in the circuit court pursuant to section 19(g) of the Act"); see also *Ahlers v. Sears, Roebuck Co.*, 73 Ill. 2d 259, 265 (1978) (holding that "Commission approval of a settlement agreement constitutes a decision of the Commission and is, in legal effect, the equivalent of an award within the meaning of section 19(g)"). As our colleagues in the First District recognized, the methods of enforcing an employer's obligation to pay outstanding medical bills are "somewhat circuitous"; however, the commonality to the available courses of action "is that they must be undertaken by the employee for whose benefit these provisions were enacted." *Marque Medicos Farnsworth, LLC*, 2018 IL App (1st) 163351, ¶¶ 28-

8

32. Our colleagues in the First District suggested that counsel insist that any settlement agreement contain specified dollar amounts for outstanding medical bills to provide a "less circuitous means of avoiding this problem in the future." *Id.* ¶ 32. Thus, the Act permits a medical provider to collect unpaid medical expenses from an employee, not an employer, and sets forth various methods by which an employee may enforce an employer's obligation to pay such medical expenses.

¶ 21    Lastly, we note that Midwest's complaint sought to recover "interest at the rate of 1% per month that began to accrue as set forth in 820 ILCS 305/8.2." Section 8.2(d)(3) of the Act requires an employer who fails to pay a medical provider within 30 days of receipt of a bill containing substantially all necessary requirements to pay interest in the amount of 1% per month to the provider. 820 ILCS 305/8.2(d)(3) (West 2020). As Abell correctly notes, the Illinois legislature amended the Act in 2018 to include section 8.2(d)(4), which provides as follows:

> "If the employer or its insurer fails to pay interest within 30 days after payment of the bill as required pursuant to paragraph (3), the provider may bring an action in circuit court for the sole purpose of seeking payment of interest pursuant to paragraph (3) against the employer or its insurer responsible for insuring the employer's liability pursuant to item (3) of subsection (a) of Section 4. The circuit court's jurisdiction shall be limited to enforcing payment of interest pursuant to paragraph (3). Interest under paragraph (3) is only payable to the provider. An employee is not responsible for the payment of interest under this Section. The right to interest under paragraph (3) shall not delay, diminish, restrict, or alter in any way the benefits to which the employee or his or her dependents are entitled under this Act." *Id.* § 8.2(d)(4).

The legislature further provided that "[t]he changes made to this subsection (d) by this amendatory

9

Act of the 100th General Assembly apply to procedures, treatments, and services rendered on and after the effective date of this amendatory Act of the 100th General Assembly." *Id.*

¶ 22    Here, Midwest's complaint sought to recover interest for services and treatment provided to Lyell in 2011—well after the effective date of the amendatory Act. Thus, Midwest's request to recover interest in a breach of contract action directly conflicts with the express language of the Act and the intent of the legislature.

¶ 23    In sum, Midwest failed to plead sufficient facts to show it was an intended third-party beneficiary to the settlement contract, and its request for interest was not permissible under the Act. Therefore, we conclude that the circuit court properly dismissed Midwest's complaint against Abell.

¶ 24                                III. Conclusion

¶ 25    For the foregoing reasons, we affirm the judgment of the circuit court of Williamson County dismissing the complaint.

¶ 26    Affirmed.